## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| LM INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 3:22-CV-0917-K |
| | § | |
| CINCINNATI INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff LM Insurance Company's ("Plaintiff") Motion for Partial Summary Judgment on Duty to Defend (the "Motion") (Doc. No. 22). Defendant Cincinnati Insurance Company ("Defendant") filed a Response to Plaintiff's Motion for Partial Summary Judgment on Duty to Defend (Doc. No. 29), brief in support (Doc. No. 30), and appendix (Doc. No. 31) (together, the "Response"). Plaintiff filed a Reply Brief in Support of its Motion for Partial Summary Judgment (the "Reply") (Doc. No. 32). The Court has carefully considered the Motion, the Response, the Reply, the applicable law, and the relevant portions of the record. The Court finds that Plaintiff shows Rogers-O'Brien Construction Company, Ltd. ("Rogers") is an "additional insured" under the insurance policy issued by Defendant and, applying Texas' eight-corners rule, Defendant's duty to defend Rogers as an "additional insured" is triggered by the allegations in the underlying state court petition

1

when compared with the terms of the insurance policy.  Further, even if the Court assumed without deciding that the limited exception to the eight-corners rule applies here, Defendant's extrinsic evidence cannot be considered because it does not conclusively establish the coverage fact to be proved, that is whether Rogers was an additional insured under this insurance policy at the time of the underlying accident. The Court also finds that Plaintiff is entitled to recover its costs and fees incurred in defending Rogers in the underlying action and in filing this federal action.  For these reasons, the Court **GRANTS** Plaintiff's Motion.  The Court **dismisses without prejudice** Plaintiff's claim for declaratory relief on Defendant's duty to indemnify as this issue is not justiciable.

## I.    Factual and Procedural Background

(All page citations to filings in this case are to the CM/ECF page number.) Plaintiff filed this declaratory action against Defendant in federal court on the basis of diversity jurisdiction.  Doc. No. 1 at 2; *see also* Doc. No. 5 at 2.  Plaintiff asks the Court declare the parties' rights and duties under a commercial general liability policy Defendant issued to Red Steel Company ("Red Steel") and under which Rogers is an additional insured, as those rights and duties relate to an underlying state court action. Doc. No. 5 at 2.

Esteban S. Alvarez ("Mr. Alvarez") filed a lawsuit in state court (the "State Action") for severe injuries he allegedly sustained when a dumpster gate fell on him while he was working as a security guard at The Plaza at Preston Center on January 23,

2

2019. Doc. No. 5 at 3. In his Second Amended Petition (the "Petition"), Mr. Alvarez named additional defendants, including Rogers and Red Steel, Defendant's insured. *See generally id.* at 36-46. Mr. Alvarez alleges that Rogers, along with Red Steel and other named defendants, "owned, installed, maintained, designed, manufactured and/or managed the dumpster gate which failed and injured" him. *Id.* at 39. Specifically as to Rogers, Mr. Alvarez alleges that "Defendant Rogers was the general contractor in charge of the construction site at the Plaza at Preston Center which included the installation of the dumpster gate which failed and severely injured [him]." *Id.* at 41. Mr. Alvarez alleges the following actions or omissions of Rogers constitute negligence and gross negligence and, therefore, establish its liability for Mr. Alvarez's claims for negligence and premises liability:

> 1. In failing to do that which a reasonable and prudent general contractor would have done under the same or similar circumstances;
> 2. in failing to exercise ordinary care;
> 3. in failing to follow the architects and engineers specifications for the correct type of dumpster gate to use on the premises;
> 4. in failing to properly specify the safe type of dumpster gate to use on the premises;
> 5. in failing to install a safe dumpster gate on the premises;
> 6. in creating a dangerous and hazardous condition by installing a dumpster gate that was not structurally strong enough to withstand normal wear and tear;
> 7. Defendant knew or should have known that improperly ordering and utilizing a two hinged metal dumpster gate instead of a three hinged metal dumpster gate, as specified, presented an unreasonable risk of harm to third parties;
> 8. Plaintiff was not aware nor could have been aware of this risk;
> 9. Defendant failed to take reasonable steps to discover and correct the dangerous condition and failed to warn Plaintiff of the existence of the danger;

10. in failing to follow proper plans, specifications, city ordinances and building codes in the manufacturer and installation of the dumpster gates; and

11. In failing to hire competent subcontractors to perform work related to the dumpster gates which injured Plaintiff.

*Id.*

Mr. Alvarez also alleges in his Petition that "Rogers, as the general contractor in control of the installation of the dumpster gate, contracted with . . . Red Steel . . . to perform work related to the dumpster gates at issue in this lawsuit." *Id.* at 42. Mr. Alvarez further alleges that, "[a]t the instruction of Defendant Rogers," Red Steel "provided labor materials and equipment to manufacture and install the dumpster gates which failed and injured [Mr. Alvarez]." *Id.* As alleged in the Petition, the following actions or omissions of Red Steel constitute negligence and gross negligence and, therefore, demonstrate its liability for Mr. Alvarez's claims for negligence and premises liability:

1. In failing to do that which a reasonable and prudent subcontractor would have done under the same or similar circumstances;

2. in failing to exercise ordinary care;

3. in failing to follow the architects and engineers specifications for the correct type of dumpster gate to use on the premises;

4. in failing to properly specify the safe type of dumpster gate to use on the premises;

5. in failing to install the safe type of dumpster gate on the premises;

6. in creating a dangerous and hazardous condition by installing a dumpster gate that was not structurally strong enough to withstand normal wear and tear;

7. Defendants knew or should have known that improperly ordering and utilizing a two hinged metal dumpster gate instead of a three hinged metal dumpster gate, as specified, presented an unreasonable risk of harm to third parties;

8. Plaintiff was not aware nor could have been aware of this risk;

4

9. Defendants failed to take reasonable steps to discover and correct the dangerous condition and failed to warn Plaintiff of the existence of the danger; [and]
10. in failing to follow proper plans, specifications, city ordinances and building codes in the manufacturer and installation of the dumpster gates.

*Id.* at 42-43.

It is undisputed that Defendant issued to Red Steel a commercial general liability policy (the "Red Steel Policy") with a coverage period of July 1, 2018, to July 1, 2019. *See* Doc. No. 22 at 42; Doc. No. 31 at 187; *see also* Doc. No. 30 at 8. It is also undisputed that the Red Steel Policy includes an endorsement providing coverage for additional insureds. Doc. No. 22 at 4; Doc. No. 30 at 8. This endorsement, "Contractors' Commercial General Liability Broadened Endorsement", provides in relevant part:

C. Coverages: . . .

9. Automatic Additional Insured—Specified Relationships

a. The following is hereby added to SECTION II—WHO IS AN INSURED:

(1)   Any person or organization described in Paragraph 9.a.(2) below (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of:
(a) A written contract or agreement;
. . .
Is an insured[.]

(2)   Only the following persons or organizations are additional insureds under this endorsement,

5

and insurance coverage provided to such additional insureds is limited as provided herein:

. . .

> (f)  Any person or organization with which you have agreed per Paragraph 9.a.(1) above to provide insurance, but only with respect to liability arising out of "your work" performed for that additional insured by you or on your behalf.   A person or organization's status as an insured under this provision of this endorsement continues for only the period of time required by the written contract or agreement, but in no event beyond the expiration date of this Coverage Part.   If there is no written contract or agreement, or if no period of time is required by the written contract or agreement, a person or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

c.  SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS is hereby amended as follows:

> (1)  Condition 5.  Other Insurance is amended to include:

> > (a)  When required by a written contract or agreement, this insurance is primary and/or noncontributory as respects any other insurance policy issued to the additional insured, and such other insurance policy shall be excess and/or noncontributing, whichever applies, with this insurance.

Doc. No. 22 at 101-104; Doc. No. 31 at 246-249.  It is further undisputed that the underlying contract between Red Steel (the sub-contractor) and Rogers (the contractor) (the "Contract") required Red Steel to maintain a commercial general

liability insurance policy including Rogers as an additional insured.  Doc. No. 22 at 5-6; Doc. No. 30 at 6.  The parties likewise do not dispute that the Contract also expressly provides, under section "9.1(C) Continuing Completed Operations Liability Insurance", that coverage for Rogers "shall" be maintained "for at least 2 years following substantial completion of the work."  Doc. No. 22 at 6 (quoting Ex. D at 139-140); Doc. No. 30 at 6.

Plaintiff had issued an insurance policy to Rogers and, under that policy, agreed to defend Rogers in the State Action.  Doc. No. 22 at 6.  On June 12, 2020, Plaintiff tendered Mr. Alvarez's Second Amended Petition to Defendant and made a demand on behalf of Rogers that Defendant defend and indemnify Rogers in the State Action.  *Id.*; *see id.* at 148-49.  Defendant, however, refused to defend Rogers, stating that Rogers "ceased to be an additional insured in 2016 and is not entitled to a defense from [Defendant]."  *Id.* at 153.

Plaintiff, as subrogee of Rogers, filed this action against Defendant asserting breach of contract and seeking a declaratory judgment that Defendant has the primary duty to defend Rogers in the State Action, that this duty to defend began when first tender was made to Defendant, and that Defendant breached this duty.  Doc. No. 5 at 9; *see* Doc. No. 22 at 10.  Plaintiff seeks reimbursement of costs it has incurred in defending Rogers in the State Action, as well as Plaintiff's own attorneys' fees and costs for bringing this federal declaratory action. Doc. No. 5 at 2, 9; *see* Doc. No. 22 at 10.  Plaintiff filed the Motion for Partial Summary Judgment which is now before the Court.

## II.    Legal Standards and Applicable Law

### A.    Summary Judgment

"Summary judgment is required when 'the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED.R.CIV.P. 56(a)).  A dispute of a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the moving party will have the burden of proof on a claim, "the party 'must establish beyond peradventure all of the essential elements of the claim.'"  *Eguchi v. Kelly*, Civ. Action No. 3:16-CV-1286-D, 2017 WL 2902667, at *1 (N.D. Tex. July 7, 2017)(Fitzwater, J.) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th 1986)).  "This means that the moving party must demonstrate that there are no genuine and material fact disputes and that the moving party is entitled to summary judgment as a matter of law."  *Id.* (citing *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).  "[T]he 'beyond peradventure' standard is 'heavy.'"  *Id.* (internal citations omitted).

Once the movant satisfies his burden, the nonmovant may not rest on the pleadings but must present competent summary judgment evidence showing a genuine fact issue for trial exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc).  "The party opposing summary judgment is required to identify specific evidence in the record and to

articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)(en banc) (nonmovant may satisfy this burden by providing depositions, affidavits, and other competent evidence; not with "conclusory allegations, speculation, and unsubstantiated assertions."). If the nonmovant fails to meet this burden, summary judgment must be granted. *Celotex*, 477 U.S. at 322.

All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant, and all disputed facts resolved in favor of the nonmovant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

**B.      Applicable Law on Duty to Defend**

The parties do not dispute that Texas law governs the issues in this case. *See Penn-Am. Ins. Co. v. Tarango Trucking, L.L.C.*, 30 F.4th 440, 444 (5th Cir. 2022); *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). "Under Texas law, an insurer may have two responsibilities relating to coverage—the duty to defend and the duty to indemnify." *ACE Am. Ins.*, 699 F.3d at 839 (quoting *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011)). These are two "distinct and separate duties" and "one duty may exist without the other." *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 743 (Tex. 2009) (internal

quotations and citations omitted).  Plaintiff moves for summary judgment only on the duty to defend.

Where a policy contains a duty to defend—as the Red Steel Policy does here—the party seeking coverage bears the burden of showing that it is an additional insured under the terms of the policy.  *ACE Am. Ins.*, 699 F.3d at 839; *see Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 372 S.W.3d 118, 124 (Tex. 2010).  If the party meets its initial burden, the court then applies Texas' "eight-corners rule" to determine whether "the facts alleged in the underlying state court proceedings are sufficient to trigger the duty to defend under the policy."  *ACE Am. Ins.*, 699 F.3d at 839.

Applying Texas' eight-corners rule, "the insurer's duty to defend is determined by comparing the allegations in the plaintiff's petition to the policy provisions, without regard to the truth or falsity of those allegations and without reference to facts otherwise known or ultimately proven."  *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 199 (Tex. 2022) (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)).  Indeed, the eight-corners rule "derives [its name] from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the plaintiff's pleadings."  *Monroe*, 640 S.W.3d at 199 (citing *GuideOne*, 197 S.W.3d at 308). Significantly, "[a] plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend[.]" *GuideOne*, 197 S.W.3d at 310.

"While the eight-corners rule is a settled feature of Texas law," the Texas Supreme Court recently recognized that "it is not absolute." *Monroe*, 640 S.W.3d at 199. In *Monroe*, the Texas Supreme Court expressly approved of the use of extrinsic evidence to determine an insured's duty to defend in the following limited circumstances:

> [I]f the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of whether coverage exists, Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.

*Id.* at 201-02. Although it recognized this limited exception to the eight-corners rule, the Texas Supreme Court was careful to emphasize that "the eight-corners rule remains the initial inquiry to be used to determine whether a duty to defend exists." *Id.* at 203.

## III.   Analysis

In moving for summary judgment on the duty to defend. Plaintiff argues that Rogers is an additional insured under the Red Steel Policy and, under the eight-corners rule, Defendant's duty to defend Rogers is triggered by the facts alleged in State Action Petition when considered in light of the Red Steel Policy provisions. Doc. No. 22 at 6-7. Plaintiff further argues that Defendant denied coverage based on extrinsic evidence which was "unnecessary and improper" even under the limited *Monroe* exception. *Id.* at 8-9. Because the Red Steel Policy explicitly provides that Defendant is the primary insurer for Rogers as an additional insured, Plaintiff also contends that,

as subrogee of Rogers, it is entitled to recover its fees and costs for bringing this suit as well as the costs it incurred in defending Rogers in the State Action. *Id.* at 9-10.

In its Response, Defendant does not put forth an argument related to the existence of a duty to defend Rogers under the initial inquiry of the eight-corners rule. Instead, the crux of Defendant's responsive argument is that, based on extrinsic evidence permitted under *Monroe*, "any status that Rogers [] had as an additional insured under [the Red Steel Policy] ceased at the latest in December of 2015 and Rogers [] was not an additional insured under the policy in 2019 entitled to a defense or indemnification." Doc. No. 30 at 6. Defendant does not address Plaintiff's argument that, as the subrogee of Rogers, it is entitled to recover damages arising from Defendant's refusal to defend Rogers.

In its Reply, Plaintiff contends that the eight-corners rule is determinative of Defendant's duty to defend Rogers as an additional insured under the Red Steel Policy. Doc. No. 32 at 2-3. Plaintiff further asserts that, even so, Defendant's extrinsic evidence cannot be considered because it fails to satisfy the third *Monroe* criteria, that the evidence "conclusively establishes the coverage fact to be proved." *Id.* (quoting *Monroe*, 640 S.W.3d at 201-202).

A.    **Duty to Defend**

1.    **Texas' Eight-Corners Rule**

In determining whether there is a duty to defend, the Court must make the initial inquiry under the eight-corners rule. *See Monroe*, 640 S.W.3d at 203. "Under

Texas law, the interpretation of an unambiguous contract is a question of law for the court to decide by 'looking at the contract as a whole in light of the circumstances present when the contract was entered.'" *ACE Am. Ins.*, 699 F.3d at 842 (citation omitted). "The terms used in the contract are given their plain, ordinary meaning unless the contract itself shows that the parties intended the terms to have a different, technical meaning." *Id.* (citation omitted) (cleaned up). "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." *Id.* (citation omitted). Neither party argues ambiguity or that any term should be given anything other than its plain and ordinary meaning.

Having viewed the evidence and taken all reasonable inferences in the light most favorable to Defendant, *see Diebold*, 389 U.S. at 655, the Court finds that the summary judgment record establishes Rogers qualifies an additional insured under the Red Steel Policy, *see ACE Am. Ins.*, 699 F.3d at 839. It is undisputed that the Red Steel Policy includes an endorsement providing coverage for additional insureds. Doc. No. 22 at 4; Doc. No. 30 at 8; *see also* Doc. No. 22 at 101-104 (relevant Red Steel Policy endorsement); Doc. No. 31 at 246-249 (same). It is further undisputed that the Contract between Red Steel and Rogers required that Red Steel maintain a commercial general liability insurance policy which includes Rogers as an additional insured for a period of "at least 2 years following substantial completion of the work." Doc. No. 22 at 5-6 (quoting Ex. D at 139-140) (emphasis added); Doc. No. 30 at 6. The Court

13

finds that Plaintiff has shown Rogers qualifies an additional insured under the Red Steel Policy.  *See ACE Am. Ins.*, 699 F.3d at 839.

Next, applying the eight-corners rule, the Court finds the facts alleged in the State Action Petition are sufficient to trigger Defendant's duty to defend Rogers as an additional insured under the provisions of the Red Steel Policy.  "In performing its eight-corners review, a court may not read facts into the pleadings, look outside the pleadings, or speculate as to factual scenarios that might trigger coverage or create an ambiguity."  *Gilbane*, 664 F.3d at 596-597 (citing *Nat'l Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997)).  Here, the Red Steel Policy provides that insurance coverage for Rogers, as an additional insured, is limited "to liability arising out of ' [Red Steel's] work' performed for [Rogers] by [Red Steel] or on [Red Steel's] behalf."  Doc. No. 122 at 103; Doc. No. 31 at 249.  The Red Steel Policy directs that an "organization's status as an insured under this provision of this endorsement continues for only the period of time required by the written contract or agreement, but in no event beyond the expiration date of this Coverage Part."  Doc. No. 22 at 103; Doc. No. 31 at 248.  The coverage period of the Red Steel Policy is July 1, 2018, to July 1, 2019.  *See* Doc. No. 22 at 42; Doc. No. 31 at 187.  The parties do not dispute the Contract expressly provides that coverage for Rogers "shall" be maintained "*for at least* 2 years following substantial completion of the work."  Doc. No. 22 at 6 (citing Ex. D at 139-140) (emphasis added); Doc. No. 30 at 6.  Finally, the Red Steel Policy specifies that, "[w]hen required by a written contract or agreement,

this insurance is primary and/or noncontributory as respects any other insurance policy issued to the additional insured," which "shall be excess and/or noncontributing . . . with this insurance."   Doc. No. 22 at 104; Doc. No. 31 at 249.

Turning to the State Action Petition, those allegations assert that Rogers, the general contractor on the dumpster gate installation project, contracted with Red Steel, a subcontractor, to perform work related to the dumpster gate installation.  Doc. No. 5 at 42.  The State Action Petition further alleges that Red Steel "[a]t the instruction of Defendant Rogers, . . . provided labor [sic] materials and equipment to manufacture and install the dumpster gates which failed and injured [Mr. Alvarez]."  *Id.*   The State Action Petition alleges Rogers is liable for Mr. Alvarez's injuries and damages which arise, in part or in whole, from Red Steel's work as a sub-contractor for Rogers, the contractor, "related to the dumpster gates at issue in this lawsuit."  Doc. No. 5 at 41-42.  Defendant does not dispute in its Response that the State Action Petition alleges Rogers's liability arose from Red Steel's work.  Further, Mr. Alvarez alleges he was injured on January 23, 2019, *see* Doc. No. 5 at 39, which is during the effective coverage period of the Red Steel Policy, *see* Doc. No. 22 at 42; Doc. No. 31 at 187.

In making the initial inquiry under Texas' eight-corners rule, the Court concludes that Defendant's duty to defend Rogers as an additional insured is clearly triggered upon comparing the allegations in the State Action Petition to the Red Steel Policy provisions, without the need to consider extrinsic evidence.  *See Monroe*, 640 S.W.3d at 199; *see also GuideOne*, 197 S.W.3d at 310 ("A plaintiff's factual allegations

that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend[.]").  The Court also concludes that Defendant's duty to defend Rogers is primary and noncontributory, and this duty to defend existed on June 12, 2020, the date on which first tender was made to Defendant on Rogers's behalf.  *See* Doc. No. 22 at 148-49.

### 2.    *Monroe* Exception

Defendant's argument rests entirely on its contention that, when applied here, the eight-corners rule is not determinative of whether Rogers is an additional insured under the Red Steel Policy at the time Mr. Alvarez was injured.  Specifically, Defendant argues that there is a gap in the State Action Petition because it is devoid of any allegations regarding the completion date of "the fabrication of the grates [sic]", and this fact goes to whether the Red Steel Policy covers Rogers as an additional insured. Doc. No. 30 at 8.  Defendant asserts that the Court should, therefore, go outside the "eight corners" and, under the *Monroe* exception, consider extrinsic evidence in determining whether Defendant has a duty to defend Rogers.  *Id.* at 6-8.  Based on the foregoing analysis, the Court does not agree with Defendant's argument and concludes the duty to defend can be determined under the "eight corners" rule.  However, even if the Court were to assume without deciding that a gap in the State Action Petition does exist, Defendant's argument would nevertheless fail.

The only extrinsic evidence Defendant submits is the deposition testimony of Lee Owen, the corporate representative of Red Steel.  *See generally* Doc. No. 31, Ex. 2.

16

Defendant asserts that Mr. Owen's testimony establishes Red Steel completed its work for Rogers "no later than 2013." Doc. No. 30 at 6. Defendant goes on to argue that, because the completion date was 2013, "pursuant to the policy terms, any status that Rogers O'Brien had as an additional insured under [the Red Steel Policy] ceased at the latest in December of 2015 and Rogers O'Brien was not an additional insured under the policy in 2019 entitled to a defense or indemnification." *Id.* Citing a single page of Mr. Owen's deposition testimony, Defendant asserts that "Red Steel did not perform any work on the gates that were delivered on October 31, 2012." Doc. No. 30 at 8. The following is the only reference to the date of October 31, 2012:

> Q (attorney): Do you know how long it was after this delivery on October 31, 2012, before the support posts had been placed in the ground and the concrete had cured sufficiently for Compass Steel to perform the actual erection?
>
> A (Mr. Owen): I do not.

Doc. No. 31 at 112. On that single page Defendant cites, there is no testimony to the effect that Red Steel did not perform any work on the gates after that date.

The Court may consider only extrinsic evidence satisfies three criteria: "the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved." *Monroe*, 640 S.W.3d at 202. Here, the proposed extrinsic evidence clearly fails on the third element. This testimony merely refers to the date a specific delivery of materials was made; it does not in any way "conclusively establish" the date the work was completed or even substantially

17

completed.  *See also, e.g., Am. Reliable Ins. Co. v. Weisinger*, Civ. Action No. 4:22-CV-3289, 2023 WL 5185147, at * 3 (S.D. Tex. Aug. 11, 2023) ("The deposition testimony merely provides an address for [the defendant's] property . . . which does not conclusively establish where the incident occurred."); *but see* Doc. No. 32 at 3-4 (Plaintiff identifying deposition excerpts in which Mr. Owen was explicitly asked, "when substantial completion was, and do you know when that was?" to which he answered, "I don't recall exactly.").   This testimony most certainly does not "conclusively establish" the coverage fact to be proved which is whether Rogers was an additional insured under the Red Steel Policy and, therefore, entitled to a defense in the State Action.  The Court will not infer, assume, or otherwise read anything into this testimony, which is the only way this extrinsic evidence could conclusively establish whether Rogers was covered as an additional insured.

Aside from that, Defendant does not explain how it reads a two-year expiration on Rogers's coverage under the Red Steel Policy when the Contract specifies that Red Steel must cover Rogers as an additional insured "*for at least* 2 years following substantial completion of the work.") Doc. No. 22 at 5-6 (emphasis added).  Further, the Court is unclear how Defendant reconciles this reference to October 31, 2012, as evidence that Rogers's status as an additional insured "ceased at the latest in December of 2015".  Doc. No. 30 at 6.

In the end, the Court cannot consider this extrinsic evidence as it fails to conclusively establish the coverage fact to be proved. The Court finds that Plaintiff

demonstrated it is entitled to summary judgment as a matter of law. *See Eguchi*, 2017 WL 2902667, at *1.

### 3.    Conclusion

Plaintiff has demonstrated it is entitled to summary judgment on the duty to defend as a matter of law. *See Eguchi,* 2017 WL 2902667, at *1.  The Court finds that, applying the eight-corners rule, Defendant owes a duty to defend Rogers in the State Action under the Red Steel Policy.  Defendant's duty to defend Rogers is primary and noncontributory, and is retroactive to June 12, 2020, the date on which first tender was made to Defendant on Rogers's behalf.  The Court further finds that, even assuming the limited *Monroe* exception applies, the proffered extrinsic evidence cannot be considered because it wholly fails to conclusively establish the coverage fact to be proved.  Plaintiff is entitled to summary judgment on its claim for declaratory relief on Defendant's duty to defend.

### B.    Recovery of Costs

In its Motion, Plaintiff also seeks to recover from Defendant, as the primary insurer, all costs it has incurred defending Rogers in the State Action as well as the costs and attorneys' fees it has incurred in filing this case because of Defendant's breach of contract.  Doc. No. 22 at 9.  Defendant fails to respond to or otherwise contest Plaintiff's summary judgment argument; therefore, the Court must grant summary judgment for Plaintiff that it is entitled to recover its costs and fees. *Celotex*, 477 U.S. at 322 (summary judgment must be granted if the nonmovant fails to meet its burden

opposing summary judgment).   Although Plaintiff is entitled to this award, it must file the appropriate motion under the applicable law and with the required supporting documentation for the Court to award these costs and fees.   Accordingly, said motion shall be filed **within 45 days of the date of this Memorandum Opinion and Order**.

### C.     Duty to Indemnify

Plaintiff does not move for summary judgment on its request for a judgment declaring Defendant has a duty to indemnify Rogers in the State Action.   "While the duty to defend depends on the allegations in the pleadings, the duty to indemnify is triggered by the actual facts that establish liability in the underlying suit."   *State Farm Lloyds v. Richards*, 966 F.3d 389, 396 (5th Cir. 2020) (quoting *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 472 (5th Cir. 2009)).   "Generally, Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless 'the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'"   *Richards*, 966 F.3d at 396-97 (quoting *Northfield*, 363 F.3d at 529).   If "the exception to non-justiciability does not apply" and the underlying action has not yet been adjudicated, the duty to defend issue is not justiciable.   *Richards*, 966 F.3d at 397.   Here, the Court concludes that the issue of a duty to indemnify is not justiciable—the Court found Defendant has a duty to defend Rogers and the record reflects that the State Action has not been decided.   *See* Doc. No. 43 at 2 ("The underlying case in this dispute is currently specially set for trial on February 20, 2024.").   Accordingly, the Court **dismisses without prejudice**

Plaintiff's claim for declaratory relief on Defendant's duty to indemnify as non-justiciable.

## IV.   Conclusion

The Court determines that Rogers qualifies an additional insured under the Red Steel Policy at issue and, applying Texas' eight-corners rule, Defendant owes a duty to defend Rogers as an additional insured in the state court case, *Esteban S. Alvarez v. Venture Commercial Management, LLC*, Cause No. CC-19-00837-C.  The Court further concludes that, even if the limited *Monroe* exception applies, the extrinsic evidence presented by Defendant cannot be considered in determining the duty to defend as it fails to conclusively establish the coverage fact to be proved.  The Court finds that Defendant's duty to defend is primary and non-contributory, and Defendant's duty to defend is retroactive to June 12, 2020, the date on which first tender was made to Defendant on Rogers's behalf.  The Court also finds that Plaintiff is entitled to recover the costs and fees incurred in defending Rogers in the State Action and in filing this federal matter from Defendant, the primary insurer, resulting from its breach of contract.  Plaintiff must file the appropriate motion for an award of these costs and fees.  For these reasons, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment on Duty to Defend.

Finally, the Court **dismisses without prejudice** Plaintiff's claim for declaratory relief on Defendant's duty to indemnify as non-justiciable.

**SO ORDERED.**

Signed January 30th, 2024.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE